UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHELLE ERNST,<br><br>        Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No. CV-05-0194-MWL<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND REMANDING FOR AN<br>IMMEDIATE AWARD OF BENEFITS |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on February 27, 2006. (Ct. Rec. 12, 15). Plaintiff Michelle Ernst ("Plaintiff") filed a reply brief on January 18, 2006. (Ct. Rec. 17). Attorney Maureen Rosette represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12) and remands for an immediate award of benefits. The Court **DENIES** Defendant's Motion for Summary Judgment. (Ct. Rec. 15).

**JURISDICTION**

On March 12, 2002, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits, alleging disability since October 1999, due to neurological problems, pain in her neck, shoulders, arms and back of head, dizziness, lack of balance, numbness in arms and head, sinus and heart problems and mild depression. (Administrative Record ("AR") 68-70, 81, 103). The application was denied initially and on reconsideration.

On December 9, 2003, Plaintiff appeared before Administrative Law Judge ("ALJ") Mary B. Reed, at which time testimony was taken from Plaintiff, medical expert Glen A. Almquist, M.D., and vocational expert Deborah LaPoint. (AR 340-403). On November 3, 2004, the ALJ issued a decision finding that Plaintiff was not disabled. (AR 14-26). The Appeals Council denied a request for review on May 16, 2005. (AR 6-9). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on June 27, 2005. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 35 years old on the date of the ALJ's decision. (AR 14). She completed the tenth grade in school and has past relevant work as a grocery store clerk. (AR 87, 369-370). Plaintiff indicated that she also cleaned homes for elderly people in 1990 and 1991.

///

(AR 82, 370).  She stated that she stopped working in April 1994 when she became pregnant.  (AR 81).

At the administrative hearing held on December 9, 2003, Plaintiff testified that she stands approximately five feet tall and weighs about 220 pounds.  (AR 368).  She stated that she weighed about 170 pounds prior to hurting her neck and had gained weight due to immobility.  (AR 368).  She indicated that she completed the ninth grade and never received a GED.  (AR 369).

Plaintiff testified that she worked as a clerk/bagger at a grocery store and her responsibilities included bagging groceries, stocking shelves and carrying groceries out to cars.  (AR 369). In 1990 and 1991 she assisted elderly people by cleaning their homes.  (AR 370).  She indicated that, about a year and a half prior to the hearing, in 2001, she attempted cleaning homes and doing light yard work, but quit after a couple of weeks when it aggravated her lower back.  (AR 370).

Plaintiff reported that she was in an automobile accident when she was 15 years old, and all the vertebrae in her neck were fractured as a result of the accident.  (AR 371).  She testified, however, that she felt fine until 1999 when she began having pain in her head and neck.  (AR 372).  She stated that, since that time, she has constant headaches which last all day and range from mild to rather severe.  (AR 372-373).  She indicated that she has severe headaches about once every couple of days and they last from an hour or two to several days.  (AR 373).  She stated that medications do not alleviate her severe headaches.  (AR 373).

///

///

With regard to neck pain, Plaintiff testified that she can feel deep pain on both sides of her neck and, on a scale of one to 10, she indicated that the severe pain in her neck rates as a 12. (AR 373).  Again, medication reportedly did not alleviate the pain in her neck.  (AR 373).  She has been wearing a neck collar, off and on, for several years.  (AR 374).  She stated that it helps with the pain some days, but other days it did not.  (AR 374). Besides medication and the neck collar, Plaintiff also uses heat and ice daily in an attempt to alleviate pain.  (AR 375). Plaintiff indicated that she has a decreased range of motion with her neck and turning to look left or right caused pain.  (AR 375).

Plaintiff testified that she also has problems with her left arm and hand.  (AR 376).  Since 1999, her left hand has had a constant tingling sensation in the middle and ring fingers and pinky.  (AR 376).  She experiences the same type of tingling sensation with her right hand, but very infrequently.  (AR 377).

Plaintiff stated that she injured her low back while working at the grocery store in the early 1990s.  (AR 377-378).  The attempt to clean homes in 2001 aggravated the low back problems. (AR 378).  The back problems make it difficult for her to walk and lift.  (AR 378).  She described the low back pain as a sharp pain that runs across her whole lower back, into both hips, both thighs and her buttocks.  (AR 378).  It also affects her sleep as she experiences waking pain in both legs down to her ankles.  (AR 379).  Plaintiff testified that she wakes up about every 45 minutes due to the pain and she is only able to get a total of maybe four hours of sleep a night.  (AR 383).  Because of ///

difficulty sleeping at night, Plaintiff stated that she naps an hour or two in the morning, an hour or two in the afternoon, an hour in the evening and a couple of hours at night.  (AR 384).

She indicated that she could bend if performed slowly and could sit a couple of minutes before needing to shift her position.  (AR 379-380).  Plaintiff stated that if she sat in one position for longer than five to 10 minutes, her legs would go numb.  (AR 393).  She testified that could stand in one spot for five to ten minutes at a time and could walk about 300 feet in one stretch.  (AR 382).  She indicated that the maximum she could lift and carry is probably five pounds.  (AR 382).

Plaintiff stated that she had ridden in a car for two hours in order to attend the administrative hearing.  (AR 380-381).  She does not drive because it causes her pain and it is not safe because she cannot turn her head very well.  (AR 381).

Plaintiff testified that she typically spends her time sleeping and watching television.  (AR 383).  She reported she is able to do housework and chores, but only in very small increments.  (AR 383).  A couple of months prior to the hearing, Plaintiff stated that she had been attempting to do 30 minutes of aerobic exercise, three times a week.  (AR 385).  She leaves the house only to attend her monthly doctor's appointment and to go grocery shopping.  (AR 389).  She indicated that she helps her son with school work, attempts to do a little hand sewing and crocheting, and reads a little.  (AR 389-390).

Plaintiff stated that she home-schools her nine-year-old son.  (AR 390).  They spend 10 to 15 minutes at a time doing school
///

work, several times during the day.  (AR 390).  She indicated that they spend a total of about two hours doing school work each day. (AR 391).

Plaintiff testified that she switched from OxyContin to methadone for pain and, at first, experienced dizziness from the methadone.  (AR 385-386).  She opined that the methadone provided improved pain relief over the OxyContin.  (AR 386).  She also takes Effexor for depression, lorazepam for panic attacks, and propranolol for heart arrhythmia.  (AR 387-388).  She stated that she has a panic attack about twice a week, and had experienced panic attacks for about 10 years.  (AR 387).

Medical expert Glen A. Almquist and vocational expert Deborah LaPoint also testified at the administrative hearing held on December 9, 2003.  (AR 346-367, 397-401).

### SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
///

Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, Plaintiff's residual functional capacity ("RFC")

assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either

///

///

disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

The ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, October 1, 1999.  (AR 15).  At step two, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar and cervical spine, gastroespheageal reflux disease and obesity, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments.  (AR 20).  The ALJ specifically indicated that the record does not establish that Plaintiff has a severe mental impairment meeting the 12-month durational requirements of the Social Security Act.  (AR 20).

The ALJ concluded that Plaintiff has the RFC to perform a wide range of light exertion work with occasional above shoulder height work and no work around unprotected heights.  (AR 22).

At step four of the sequential evaluation process, the ALJ found that Plaintiff lacks the RFC to perform the exertional requirements of her past relevant work as a stock clerk or bagger. (AR 23).  However, the ALJ determined that, within the framework of the Medical-Vocational Guidelines ("Grids") and based on the vocational expert's testimony and Plaintiff's RFC, age, education, and work experience, there were a significant number of jobs in the national economy which she could perform despite her

///

///

limitations.  (AR 23-24).  Examples of such jobs included work as a cashier II, a cafeteria attendant, and a ticket seller.  (AR 24).  Accordingly, the ALJ determined at step five of the sequential evaluation process that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 24-26).

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.  The ALJ erred by giving more weight to the opinion of Dr. Almquist, a nonexamining physician, than to her treating physician, Dr. Barry Bacon; and

2.  The ALJ's opinion that Plaintiff is not fully credible is erroneous and not properly supported.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.  Reliance on Medical Expert**

Plaintiff contends that the ALJ erred by relying on the opinions of a nonexamining medical advisor, Glen Almquist, M.D., and that the ALJ erred by not according more weight to the opinions of treating physician, Barry J. Bacon, M.D.  (Ct. Rec. 13, pp. 9-14).  The Commissioner responds that the ALJ properly evaluated the medical evidence and gave convincing reasons for favoring the findings of Dr. Almquist over the disability opinion of Dr. Bacon.  (Ct. Rec. 16, pp. 10-12).

///

The courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability."  *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.  Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor.  *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion.  *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific,

legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

On December 9, 2003, Glen A. Almquist testified at the administrative hearing as a medical expert. (AR 346-367). Dr. Almquist opined that Plaintiff suffered from the severe impairment of degenerative disc disease of the cervical spine, C5-6 and C6-7, moderate, without significant radiculopathy, and minor degenerative arthritis of the lumbosacral spine, L4-L5, without radiculopathy. (AR 348). Dr. Almquist also noted obesity; prescription drug addiction, severe and chronic, with probable multiple secondary findings; headaches; abdominal pain and fatigue. (AR 348). Dr. Almquist summarized the medical record (AR 348-355) and noted that Plaintiff has been on an addicting and high dose of narcotic medicine (AR 355). He stated that she had recently been switched to methadone, a highly addictive drug. (AR 355). Dr. Almquist felt that the record did not reflect back pain or neck pain symptoms that required addicting doses of medication. (AR 355). It was Dr. Almquist's opinion that the pain management chosen by Dr. Bacon resulted in an addiction to pain medication by Plaintiff. (AR 359-361). However, Dr. Almquist also testified that the good results from the epidural block reflected that Plaintiff was not malingering and was not drug seeking at that time. (AR 365). Dr. Almquist did not state that the record displayed that Plaintiff exhibited drug-seeking behavior.

Dr. Almquist opined that Plaintiff, because of her cervical spine issues, inactivity and weight, should be restricted to light work with only occasional activity above shoulder-height. (AR

355-356).  He indicated that there would be no restrictions in
bending, stooping, kneeling, crawling, or climbing, and no
restrictions on sitting, standing or walking, but that she should
not work at unprotected heights.  (AR 356).

Dr. Almquist testified that he never discovered a physical
exam in Dr. Bacon's medical reports that was of any use.  (AR
362).  He indicated that most of Dr. Bacon's records contained
complaints and information from conversations with Plaintiff but
did not include any in-depth neurological examinations.  (AR 362).

The ALJ found Dr. Almquist's testimony persuasive and,
accordingly, determined that Plaintiff retained the RFC to perform
light exertion work with occasional above shoulder height work.
(AR 22).  By adopting the findings of Dr. Almquist and concluding
that Plaintiff could perform a wide range of light work, the ALJ
rejected the disability finding of Dr. Bacon.  With regard to Dr.
Bacon, the ALJ found that Dr. Bacon's opinions were not persuasive
because his records show little in the way of physical
examinations, he is not a neurologist or orthopedist, his actual
examinations were sporadic and cursory, his assessments were based
on Plaintiff's self-reports, and his notes show that Plaintiff was
in no distress.  (AR 22).

The record reveals that Dr. Bacon completed a general
examination of Plaintiff on November 10, 1999.  (AR 171-172).
Plaintiff reported paresthesias in the left upper extremity, pain
and numbness radiating down the left arm, and an increase in
headaches and neck pain.  (AR 171).  Dr. Bacon diagnosed Plaintiff
with recent sinusitis, paresthesias of the left upper extremity
probably related to an old motor vehicle accident, palpitations,

low back pain, elevated blood pressure, fatigue, previous peptic
ulcer disease, and status post tubal ligation and left breast
surgery.  (AR 172).  Dr. Bacon also suggested x-rays of the neck
at that time.  (AR 172).  X-rays taken on November 11, 1999
revealed narrowing of the C5-6 and C6-7 intervertebral disc spaces
and identified posterior osteophyte at C5-6.  (AR 186).

Dr. Bacon saw Plaintiff again on December 7, 1999.  (AR 170).
Dr. Bacon reviewed the November 11, 1999 x-ray results with
Plaintiff and recommended an MRI of the cervical spine.  (AR 170).
He also suggested a neurosurgical consultation.  (AR 170).  An MRI
taken on February 29, 2000, revealed some slight left sided
posterior protrusion of nuclear material and osteophytes at the
C5-6 level.  (AR 185).  There also appeared to be some mild left
sided herniation of nuclear material along with osteophytes at the
C5-6 and C6-7 levels and mild compression of the C6 and C7 nerve
roots on the left.  (AR 185).  Neural foramina could not be ruled
out conclusively.  (AR 185).

On March 22, 2000, Plaintiff returned to Dr. Bacon regarding
the results of the February 29, 2000 MRI.  (AR 168).  Based on the
MRI, Dr. Bacon determined that Plaintiff had significant cervical
disc disease with left sided radiculopathy at the level of C6 and
C7.  (AR 168).  He felt that Plaintiff was in need of a
neurosurgical evaluation. (AR 168).  On April 28, 2000, Dr. Bacon
saw Plaintiff and noted that she had an appointment with a
neurosurgeon and that he would like to see her following the
evaluation with the neurosurgeon.  (AR 167).

///

///

On May 26, 2000, Plaintiff was evaluated by Jeffrey J. Larson, M.D. (AR 130-133). Dr. Larson reviewed the February 29, 2000 cervical MRI and noted that the MRI showed C5-6 spondylitic disease with spurs. (AR 132). He diagnosed Plaintiff with C5-6 spondylosis. (AR 132). Dr. Larson stated that it was possible that Plaintiff may benefit from surgical intervention, but, prior to surgery, he suggested that she undergo right C6 selective nerve root block with steroids. (AR 132).

On June 21, 2000, Dr. Bacon recommended that Plaintiff follow through with Dr. Larson's conservative plan for an injection around the suspected nerve root inflamation. (AR 166). He noted, however, that he was convinced that it was a cervical disc that was causing the symptoms and that surgery would be of benefit to her. (AR 166).

On September 27, 2000, Dr. Larson indicated that after the nerve root block, Plaintiff had temporary relief of her symptoms and was doing pretty well. (AR 127). He stated that she was a candidate for anterior cervical discectomy and fusion at C5-6 if her symptoms recur. (AR 127).

On January 27, 2001, Dr. Larson again saw Plaintiff. (AR 126). He indicated that she had approximately eight weeks of pain improvement after her nerve root block. (AR 126). However, she continued to complain of neck and arm pain which waxed and waned. (AR 126). Dr. Larson diagnosed C5-6 spondylosis and indicated that Plaintiff could continue with conservative care or opt to consider an anterior cervical discectomy and fusion at C5-6. (AR 126).

///

On February 12, 2001, Plaintiff returned to Dr. Bacon complaining of neck pain. (AR 158). Dr. Bacon diagnosed Plaintiff with neck pain with a herniated disc and some encroachment on the nerve roots to both arms and low back pain. (AR 158). Dr. Bacon saw Plaintiff on April 12, 2001 for intense headaches. (AR 157). It was noted that Plaintiff had been trying a chiropractor which did not seem to help her with her neck pain. (AR 157). She was seen again on May 11, 2001, for intense headaches. (AR 156). Dr. Bacon noted on June 11, 2001, that Plaintiff complained of fatigue and exhaustion and noted that Plaintiff sleeps a lot without much relief. (AR 155). Dr. Bacon diagnosed plantar fascititis, increased weight, exhaustion and fatigue, right upper abdominal pain intermittently, and chronic low back pain. (AR 155). On August 7, 2001, Plaintiff complained of ongoing neck pain. (AR 154). On August 22, 2001, Plaintiff reported to Dr. Bacon complaining of heart palpitations. (AR 153). On September 12, 2001, Dr. Bacon noted that Plaintiff complained of headaches, fatigue, and neck pain. (AR 152).

On November 20, 2001, Plaintiff was given a general examination by Dr. Bacon. (AR 149-150). Dr. Bacon diagnosed Plaintiff with chronic pain management particularly due to the chronic neck pain with radiculopathy symptoms, cervical disc disease, fatigue, perhaps some depression, occasional nocturnal wheezing, GERD, allergy to Ceclor, chronic tobacco abuse, history of gestational diabetes, fibrocystic breast disease and left foot injury, puncture. (AR 150). On January 4, 2002, Plaintiff reported complaining of headaches, neck pain, poor sleeping and a swollen head. (AR 148).

On January 28, 2002, Dr. Bacon noted that Plaintiff continued to complain of headaches which she described as escalating and becoming worse.  (AR 146).   Plaintiff indicated that the headaches had been terrible and at times nothing relieved them. (AR 146).  Dr. Bacon diagnosed intermittent headaches, severe in nature, unrelenting, unresponsive to the present pain management. (AR 146).  He suggested an MRI of the brain. (AR 146).  An MRI of Plaintiff's brain was completed on February 22, 2002.  (AR 177). Results revealed a negative cranial MRI.  (AR 177).

On March 7, 2002, Dr. Bacon saw Plaintiff for headaches described as "excruciating, extremely painful, basically on a daily basis."  (AR 145).  Plaintiff was again seen by Dr. Bacon on April 15, 2002, and May 16, 2002, complaining of very severe headaches.  (AR 142-144).

On May 1, 2002, Allan Troupin, M.D., completed a neurological evaluation of Plaintiff.  (AR 138-139).  Dr. Troupin assessed Plaintiff with bilateral occipital neuralgia.  (AR 138).  He indicated that it was solely a mechanical postural problem that did not respond to medication and not uncommonly associated with some degree of cervical osteoarthritis and radiculopathy.  (AR 138).  Dr. Troupin opined that Plaintiff's headaches would respond to home seated cervical traction.  (AR 138-139).

Dr. Bacon saw Plaintiff on July 8, 2002, regarding her ongoing neck pain and headaches.  (AR 141).  Dr. Bacon diagnosed Plaintiff with cervical radiculopathy.  (AR 141).  He recommended a repeat MRI of the cervical spine.  (AR 141).

///

///

An MRI was completed on July 19, 2002. (AR 176). Results revealed slightly more prominent herniation to the right at C6-7 with some mild foraminal narrowing on the right, a little more prominence of the left paracentral bulge or herniation of the disc at C4-5, and left paracentral herniation at C5-6 which was somewhat broad based and creating some mild to moderate foraminal narrowing on the left side and just mild narrowing on the right. (AR 176). There was also a mild amount of vertebral spondylosis. (AR 176).

On October 22, 2002, Dr. Bacon completed a form at the request of the Department of Social and Health Services. (AR 223). Dr. Bacon indicated that Plaintiff had cervical and lumbar disc disease, opined that Plaintiff was not able to do her past work, and concluded that treatment could possibly restore her ability to work. (AR 223).

On March 5, 2003, Dr. Bacon completed a disability statement for a property tax exemption and indicated that Plaintiff was considered to be disabled and unable to be regularly employed due to chronic neck disc disease. (AR 224). He stated that her disability began on November 1, 1999 and was expected to continue the rest of her life. (AR 224).

Although Dr. Bacon is not a neurologist or orthopaedist, he is Plaintiff's long-time treating physician. *Supra*. As noted above, a treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. *Fair,* 885 F.2d at 604-05. A regular, treating physician is in the best position to assess an individual's level of functioning. Furthermore, Dr. Bacon referred Plaintiff to an

orthopaedist, Dr. Larson, for a consultative examination, and Dr. Larson verified Plaintiff's neck problems and recommended conservative treatment and, if necessary, surgery. (AR 127). Dr. Bacon's later opinions are based on findings made by Dr. Larson. Therefore, the ALJ's rejection of Dr. Bacon's findings because he is not a neurologist or orthopedist is not legitimate.

The undersigned simply does not concur with the ALJ's statement that Dr. Bacon's examinations were sporadic and cursory and his assessments were based on Plaintiff's reporting. (AR 22). Dr. Bacon saw Plaintiff on several occasions since 1999, he completed yearly physical examinations, referred her for consultative examinations, and ordered x-rays and MRI's. *Supra*. Dr. Bacon's opinions were surely based in part on Plaintiff's reporting, but they were also based on his examinations and the results from x-rays, MRI's and the reports of physicians Dr. Bacon referred Plaintiff to.

In addition, as noted above, the Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Here, the ALJ has failed to provide any evidence, other than the opinions of the non-examining medical expert, Dr. Almquist, to support her RFC determination. Dr. Almquist's findings are contrary to the opinions of treating physician Dr. Bacon and to the weight of the evidence of record. Accordingly, the undersigned finds that the ALJ's rejection of Dr. Bacon's opinions was erroneous, the ALJ's reliance on Dr. Almquist ///

was misplaced, and the ALJ's ultimate RFC determination is not based on substantial record evidence.

When the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that physician's opinion is credited as a matter of law. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Dr. Bacon opined on October 22, 2002, that Plaintiff was not able to do her past work. (AR 223). On March 5, 2003, Dr. Bacon completed a disability statement indicating that Plaintiff was considered to be disabled and unable to be regularly employed. (AR 224). He stated that her disability began on November 1, 1999 and was expected to continue for the rest of her life. (AR 224). Dr. Bacon's opinions regarding Plaintiff's functioning are thus credited. In light of Dr. Bacon's credited opinions, it is apparent that the ALJ's determination in this case is erroneous.

**B.  Credibility**

Plaintiff argues that the ALJ's opinion that Plaintiff is not fully credible is not properly supported. (Ct. Rec. 13, pp. 14-16). Plaintiff specifically argues that the ALJ failed to give appropriate rationale for finding her allegations of fatigue unconvincing. (*Id.*) The Commissioner responds that the ALJ appropriately gave clear and convincing reasons to discredit Plaintiff's testimony. (Ct. Rec. 16, pp. 7-9).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.
///

1990).  Once the claimant produces medical evidence of an
underlying impairment, the ALJ may not discredit her testimony as
to the severity of an impairment because it is unsupported by
medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.
1998) (citation omitted).  Absent affirmative evidence of
malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "clear and convincing."  *Lester v. Chater*, 81
F.3d 821, 834 (9th Cir. 1995).  "General findings are
insufficient:  rather the ALJ must identify what testimony is not
credible and what evidence undermines the claimant's complaints."
*Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th
Cir. 1993).

The ALJ determined that Plaintiff's allegations regarding her
pain and limitations were less than fully credible.  (AR 21-22).
In support of this finding, the ALJ indicated as follows:
(1) Plaintiff's testimony of significant pain, even with pain
medication, was indicative of over reporting; (2) Plaintiff's
pain complaints were not supported by the medical evidence of
record; (3) Plaintiff's treating physician expressed concern
about the amount of narcotics Plaintiff had been taking and the
medical expert noted problems with prescription drug abuse;
(4) Plaintiff's failure to reveal an intervening injury
following her early motor vehicle accident is contradicted by
other evidence in the record; (5) Plaintiff's reports of
limitations and disabling pain were contradicted by her
activities; and (6) although Plaintiff complained of fatigue,
there was no explanation for her daytime sleepiness.  (AR 21-22).
///

It is significant to note, as indicated by the Commissioner, although Plaintiff reported severe functional limitations, she testified that she home-schooled her nine-year-old son. (AR 21, 390-391; Ct. Rec. 16, p. 7). The Commissioner also pointed out that Plaintiff testified that she could sit only five minutes before needing to move, but had ridden in a car for two hours in order to attend the administrative hearing. (AR 380-381; Ct. Rec. 16, p. 7).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g).

After reviewing the record, the undersigned judicial officer finds that the reasons provided by the ALJ for discounting Plaintiff's subjective complaints are sufficient and supported by substantial evidence in the record. Accordingly, the undersigned finds that the ALJ did not err by concluding that Plaintiff's subjective complaints regarding the extent of her functional limitations were not fully credible in this case. (AR 21-22). ///

**C.  Ability to Work**

     As noted in Section A above, the ALJ failed to give specific and legitimate reasons for rejecting the opinions of Dr. Bacon. *Supra*.  In light of the opinions of this treating physician, it is apparent that Plaintiff is much more limited than as assessed by the ALJ.  After crediting Dr. Bacon's opinions, a review of the record reveals that Plaintiff is not able perform her past work. (AR 223-224).[1]  Moreover, the issue of whether Plaintiff is capable of performing other work is resolved by crediting the opinions of Dr. Bacon, Plaintiff's long-time treating physician. Dr. Bacon completed a form at the request of the Department of Social and Health Services indicating that Plaintiff had cervical and lumbar disc disease and that Plaintiff was not able to do her past work.  (AR 223).  On March 5, 2003, Dr. Bacon completed a disability statement form opining that Plaintiff was considered to be disabled and unable to be regularly employed due to chronic neck disc disease.  (AR 224).  Dr. Bacon stated that Plaintiff's disability began on November 1, 1999 and was expected to continue the rest of her life.  (AR 224).  As such, it is apparent from the record that there is no job in the national economy for which Plaintiff is capable of working.  Accordingly, the undersigned finds that further development is not necessary for a proper determination to be made in this case.

<u>**CONCLUSION**</u>

     Plaintiff argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits.  (Ct.

---

     [1]In fact, the ALJ came to the conclusion that Plaintiff would be unable to perform her past relevant work even with the RFC determination that Plaintiff could perform a significant range of light exertion work.  (AR 25).

Rec. 13).  The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose.  *Id*. Remand is appropriate when additional administrative proceedings could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, the record is adequate for a proper determination to be made and further development is not necessary to remedy defects.

Having reviewed the record and the ALJ's decision, this Court finds that the ALJ erred by rejecting the opinions of Dr. Bacon. When Dr. Bacon's opinions are properly credited, the evidence supports an immediate award of benefits.  Accordingly,

**IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment (**Ct. Rec. 12**) is **GRANTED** and the case is **REMANDED** for an immediate award of benefits.

2.   Defendant's Motion for Summary Judgment (**Ct. Rec. 15**) is **DENIED**.

3.   Judgment shall be entered for **PLAINTIFF**.  An application for attorney fees may be filed by separate motion.

4.   The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file.

**DATED** this ___19[th]___ day of April, 2006.

_____s/Michael W. Leavitt_____
MICHAEL W. LEAVITT
UNITED STATES MAGISTRATE JUDGE